

03-CV-02629-CMP



UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| J & J CELCOM; LUPE AZEVEDO; BRADY RANCH; WOODROW W. HOLMES, Jr.; LUCILLE HOSS; JAMES P. KENNEDY; DANIEL MURRAY; RAJIVE OBEROI; KENNETH L. RAMSEY; GARY R. ROBBINS and JOANNE ROBBINS; and S & D PARTNERSHIP,<br><br>       Plaintiffs,<br><br>  v.<br><br>AT&T WIRELESS SERVICES, INC.; McCAW CELLULAR INTERESTS, INC.; AT&T WIRELESS SERVICES OF COLORADO, LLC; AT&T WIRELESS SERVICES OF IDAHO, INC.; AT&T WIRELESS SERVICES OF WASHINGTON, LLC; NEW BOISE CITY CELLULAR PARTNERSHIP; NEW FORT COLLINS-LOVELAND CELLULAR TELEPHONE COMPANY; NEW GREELEY CELLULAR COMPANY and NEW YAKIMA CELLULAR TELEPHONE COMPANY,<br><br>       Defendants. | No. **CV03-2629**<br><br>**COMPLAINT** |

Plaintiffs by their attorneys for their complaint against Defendants allege as follows:

COMPLAINT
Page 1

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800   F 206 516 3888

## I. INTRODUCTION

1. Plaintiffs were long-term investors in four highly successful partnerships: Boise City Cellular Partnership, Fort Collins-Loveland Cellular Telephone Company, Greeley Cellular Telephone Company and Yakima Cellular Partnership (collective, the "Partnerships"). The Partnerships owned and operated wireless systems as part of the nation-wide system controlled by AT&T Wireless Services, Inc. ("AWS"), one of the largest wireless communications service providers in the United States. Plaintiffs bring this action to prevent irreparable injury to themselves and the Partnerships by AWS and its wholly-owned shell corporation subsidiaries, McCaw Cellular Interests, Inc. AT&T Wireless Services of Colorado, LLC, AT&T Wireless Services of Idaho, Inc. and AT&T Wireless Services of Washington, LLC. Collectively, these subsidiaries are referred to as "AWS Affiliates." By reason of its stock holdings and other equity ownership as well as the common directors and officers, AWS owns and controls the AWS Affiliates.

2. An AWS Affiliate managed each of the four Partnerships and AWS, through an Affiliate, owned more than 95% of the outstanding interests of each Partnership. The AWS Affiliates are shell entities that exist for no other purpose than to enable and to facilitate AWS' exercise of ownership and control over the operating entities such as the Partnerships. The AWS affiliates have no offices or employees separate from AWS. Their nominal offices are at AWS' headquarters in Redmond, Washington, and all of their nominal officers and employees are AWS' officers and employees. Upon information and belief, any actions taken by the Affiliates were actually carried out by AWS officers, directors and employees.

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800  F 206 516 3888

3. Upon information and belief, AWS and its Affiliates used accounting and other practices discussed below to make each Partnership appear less valuable than it was in fact. Defendants then used their domination and control over the Partnerships to initiate, time, structure and price the "sale" of all of the assets of each of the Partnerships to newly-created partnerships that were wholly-owned by AWS. The "sale" of the assets to the new partnerships – which defendants did not even treat as a sale for tax purposes – was a sham and device with no other purpose than to eliminate the minority owners from the Partnerships for inadequate consideration.

4. Defendants' actions constitute material breaches of each of the partnership agreements and breaches of fiduciary duty.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 28 U.S.C.A. § 1332. As detailed below, all of the Defendants are citizens of the State of Washington and none of the Plaintiffs are citizens of the State of Washington. The amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Venue is appropriate in this judicial district under 28 U.S.C.A. § 139(a).

## III. PARTIES AND RELEVANT ENTITIES

7. Defendant AT&T Wireless Services, Inc., AWS, is a corporation formed under Delaware law having its principal place of business at Redmond, Washington. AWS is the successor to McCaw Cellular Communications, Inc. which was acquired by AT&T Corp. in 1994 and subsequently spun off as an independent company in July 2001. AWS is the

COMPLAINT
Page 3

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800  F 206 516 3888

second-largest wireless carrier, based on revenues, in the United States with 21 million subscribers, and full-year 2002 revenues exceeding $15.6 billion.

8. Defendant McCaw Cellular Interests, Inc. ("McCaw") is a corporation formed under Washington law. McCaw is a wholly-owned subsidiary of AWS having its principal place of business at Redmond, Washington.

1. **Boise City Cellular Partnership.**

9. Boise City Cellular Partnership ("Boise Cellular") owned the A Block cellular license issued by the Federal Communications Commission ("FCC") for the metropolitan statistical area of Boise, Idaho.

10. Defendant AT&T Wireless Services of Idaho, Inc. ("AWS-Idaho") is corporation formed under Idaho law. It is a wholly-owned subsidiary of AWS having its principal place of business at Redmond, Washington. It owned a majority of Boise Cellular and controlled the operations of that Partnership.

11. Plaintiff J & J Celcom is a Kentucky partnership with its principal place of business in Kentucky. All of the partners of J&J Celcom are citizens of Kentucky. It owned a 0.9431% interest in Boise Cellular prior to the forced liquidation of its interest, as detailed below, for which it received $699,922.

12. Defendant New Boise City Cellular Partnership ("New Boise") is a newly formed partnership having its principal place of business at Redmond, Washington. It is wholly-owned subsidiary by subsidiaries of AWS and is the successor to Boise City Cellular Partnership.

COMPLAINT
Page 4

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800  F 206 516 3888

2. **Fort Collins-Loveland Cellular Telephone Company and Greeley Cellular Telephone Company.**

13. Fort Collins-Loveland Cellular Telephone Company ("Fort Collins Cellular") was a partnership that owned the A block cellular license issued by the FCC for the metropolitan statistical area of Fort Collins-Loveland, Colorado.

14. Greeley Cellular Telephone Company ("Greeley Cellular") was a Partnership that owned the A block cellular license issued by the FCC for certain other areas in Colorado.

15. Defendant AT&T Wireless Services of Colorado, LLC ("AWS-CO") is a limited liability company formed under Delaware law. It is a wholly-owned subsidiary of AWS having its principal place of business at Redmond, Washington. AWS-CO owned a majority of the Fort Collins Cellular and Greeley Cellular and controlled the operation of these Partnerships.

16. New Fort Collins-Loveland Cellular Telephone Company ("New Fort Collins") is a partnership formed under California law. It is wholly-owned by AWS-CO and McCaw and has its principal place of business at Redmond, Washington. It is the successor to Fort Collins-Loveland Cellular Telephone Company.

17. Defendant New Greeley Cellular Telephone Company ("New Greeley") is a partnership formed under Colorado law. It is wholly owned by defendants AWS-CO and McCaw and has its principal place of business at Redmond, Washington. It is the successor to Greeley Cellular.

COMPLAINT
Page 5

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800  F 206 516 3888

18. Plaintiff Lupe Azevedo, is a citizen of the State of California. She owned a 0.2183% interest in Greeley Cellular prior to the forced liquidation of her interest for $114,119, as detailed below.

19. Plaintiff Brady Ranch is a California partnership with its principal place of business in California and all of the owners are citizens of California. It owned a 0.0075% interest in Greeley Cellular prior to the forced liquidation of its interest for $3,995, as detailed below.

20. Plaintiff Woodrow J. Holmes, Jr., is a citizen of the State of California. He owned a 0.0325% interest in Greeley Cellular prior to the forced liquidation of his interest for $17,122, as detailed below.

21. Plaintiff Lucille Hoss is a citizen of the State of New York. She owned a 0.0218% interest in Greeley Cellular Telephone Company prior to the forced liquidation of her interest for $11,415, as detailed below.

22. Plaintiff James P. Kennedy is a citizen of the State of Maryland. He owned a 0.3007% interest in Fort Collins Cellular and a 0.2183% interest in Greeley Cellular prior to the forced liquidation of his interests for $144,119 and $115,000, respectively.

23. Plaintiff Daniel B. Murray, is a citizen of the State of California. He owned a 0.2183% interest in Greeley Cellular prior to the forced liquidation of his interest for $115,000, as detailed below.

24. Plaintiff Rajive Oberoi is a citizen of the State of Minnesota. He owned a 0.2183% interest in Greeley Cellular prior to the forced liquidation of his interest for $115,000, as detailed below.

COMPLAINT
Page 6

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800  F 206 516 3888

25. Plaintiff Kenneth L. Ramsey is a citizen of the State of Kentucky. He owned a 0.2183% interest in Greeley Cellular and a 0.3866% interest in Yakima Cellular Telephone Company prior to the forced liquidation of his interests for $115,000 and $188,719, respectively.

26. Plaintiffs Gary R. Robbins and Joanne Robbins are citizens of the State of California. Together they owned a 0.1002% interest in Fort Collins Cellular prior to the forced liquidation of their for $48,024.

27. Plaintiff S & D Partnership is a California partnership having its principal place of business in the State of California. All of the partners of S & D Partnership are citizens of California. It owned a 0.3007% interest in Fort Collins Cellular and a 0.3866% interest in Yakima Cellular Telephone Company. It received a liquidating distribution from Fort Collins Cellular in the amount of $144,119 and received payment of $188,719 for its interest in Yakima Cellular Telephone Company.

3. **Yakima Cellular Partnership**

28. Yakima Cellular Partnership ("Yakima Cellular") was a partnership that owned the A block cellular license issued by the FCC for the metropolitan statistical area of Yakima, Washington.

29. AT&T Wireless Services of Washington, LLC ("AWS-WA") is a limited liability company formed under Oregon law. It is a wholly-owned subsidiary of AWS having its principal place of business at Redmond, Washington. AWS-WA owned a majority of Yakima Cellular and controlled the operation of this partnership.

COMPLAINT
Page 7

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800  F 206 516 3888

30. Defendant New Yakima Cellular Telephone Company ("New Yakima") is a partnership wholly owned by ASW-WA and McCaw and has its principal place of business at Redmond, Washington. It is the successor to Yakima Cellular.

31. McCaw, AWS-CO, AWS-Idaho, AWS-WA, New Boise, New Fort Collins, New Greeley and New Yakima are referred to collectively as the "AWS Affiliates." By reason of its stock holdings and other equity ownership as well as the common directors and officers, AWS owns and controls the AWS Affiliates.

## IV. ALLEGATIONS

32. AWS operated the Partnerships' cellular systems (Boise Cellular, Fort Collins Cellular, Greeley Cellular and Yakima Cellular) as part of larger calling areas managed by subsidiaries of AWS and its predecessor.

33. Upon information and belief, the control by AWS of regional cellular areas containing the Partnerships' cellular systems presented Defendants with opportunities to benefit themselves at Plaintiffs' expense by self-dealing and improper accounting. Upon information and belief, such actions included:

(a) The practice by AWS and its Affiliates of charging the Partnerships switch-sharing fees of 1.5 cents per minute of use even though the cost of providing the service, based upon costs disclosed by competitors, is believed to have been less than 0.25 cents per minute of use. At no time did AWS disclose to Plaintiffs the true cost of providing the service. This practice resulted in higher costs to the Partnerships and a substantial understatement of earnings and net worth of the Partnerships, with corresponding profits to AWS.

COMPLAINT
Page 8

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800  F 206 516 3888

(b) The practice by AWS and its Affiliates of averaging the costs of technical, administrative and management expenses on a regional basis. The cost-sharing formulas misrepresented the Partnerships' financial performance by overestimating the actual cost of operating the Partnerships' cellular systems and benefiting the adjacent markets owned by AWS, in which Plaintiffs had no interest.

(c) The practice by AWS and its Affiliates of allocating roaming revenues and air time revenues in a manner that disfavored the areas served by the Partnerships and favored the surrounding markets that were wholly owned by AWS.

34. Defendants failed to provide Plaintiffs with relevant financial data regarding the Partnerships and when such data was provided, Defendants' accounting practices were confusing and made it difficult to validate the appropriateness of the allocations among related entities. Although AWS provided audited financial statements for prior years, AWS and its Affiliates refused to provide audited statements for the year ended December 31, 2001, and have not otherwise disclosed the extent of related-party transactions.

35. AWS embarked upon a plan to eliminate the minority interests in the four Partnerships in March 2002. The first step in implementing the plan was to make a series of coercive tender offers to purchase the minority interests for a modest "premium" while warning that if the offers were not accepted, the AWS Affiliates would call a special meeting of each Partnership and vote their majority interests to sell all Partnership assets to another entity wholly-owned by AWS and its subsidiaries and no "premium" would be paid. All Plaintiffs rejected the coercive tender offer except S & D Partnership, which was induced to accept the offer with respect to its interest in Yakima Cellular.

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800  F 206 516 3888

36. Upon information and belief, the coercive tender offers were timed to avoid giving the minority partners any participation in the prospective growth of AWS's new Global System for Mobile Communications (which AWS refers to as GSM/GPRS) service and ultimately the much anticipated 3-G service allowing for high speed digital data transmission. According to trade publications, AWS launched its GSM/GPRS service in the Denver metropolitan area, including the area served by Fort Collins Cellular and Greeley Cellular less than two weeks after taking action to terminate the Plaintiffs' interests.

37. In June and July 2002, AWS and its subsidiaries used their domination and control of the Partnerships to vote to approve the proposed sale of the assets of each of the Partnerships to new partnerships that were wholly owned by AWS and its subsidiaries over the objection of the minority interests, including the Plaintiffs.

38. No offers from unrelated parties were solicited and no independent officers or executive committee members were involved in the process.

39. Upon information and belief, AWS did not treat the transaction as a "sale" of assets for tax purposes but rather as a distribution of assets by the old partnerships followed by a contribution of the assets to the new partnerships. AWS thus treated the transaction as a tax-free transaction as to itself but as a taxable transaction to the minority partners.

40. AWS and AWS Affiliates hired Arthur Anderson to do appraisals of the Partnerships. These appraisals served as the basis for the distributions paid to plaintiffs resulting from the transfer of Partnership assets to new partnerships controlled solely by AWS. Upon information and belief, Arthur Anderson relied on information and instructions provided by AWS and AWS Affiliates. Arthur Anderson thus produced

COMPLAINT
Page 10

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800  F 206 516 3888

appraisals that failed to value the Partnerships accurately by failing to consider: (1) the profitability and value of the Partnerships as stand-alone entities that were not controlled by AWS; and (2) the profitability and value of the Partnerships under ownership that did not manipulate costs and accounting, as discussed above, to the detriment of the Partnerships.

## V. CAUSES OF ACTION

### COUNT ONE (BREACH OF FIDUCIARY DUTY)

41. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

42. As the majority partners of the Partnerships, the AWS Affiliates owed a fiduciary duty of loyalty and a duty of good faith and fair dealing to the Plaintiffs as partners.

43. As the controlling person of the AWS Affiliates, AWS owed a fiduciary duty of loyalty and a duty of good faith and fair dealing to the Plaintiffs.

44. AWS and the AWS Affiliates breached these duties by failing to take actions to ensure that the Partnerships received as much from the sale or transfer of Partnership assets as they would have received in an arms-length transaction with a disinterested buyer. Such actions could have included appointing a committee of independent persons to retain investment bankers and attorneys to maximize the values received for the assets by soliciting bids from unrelated parties or encouraging competitive bidding.

45. AWS and the AWS Affiliates also breached their duties by: engaging in self-dealing transactions, including excessive switch-sharing fees, and by failing to account for the profits and benefits derived thereby; by failing to provide Plaintiffs with relevant data

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800  F 206 516 3888

relating to the Partnerships' financial performance and the purported sale of the Partnerships' assets; by arranging and consummating the sham sales of the assets of the Partnerships to entities wholly owned by AWS and AWS Affiliates; by causing the dissolution and liquidation of the Partnerships; and, by using appraisals that it knew or should have known were materially flawed to deprive the Plaintiffs of the fair market value of the respective ownership interests.

46. As a direct result of the conduct of AWS and the AWS Affiliates, Plaintiffs were damaged in an amount to be proved at trial.

### COUNT TWO (BREACH OF PARTNERSHIP AGREEMENTS)

47. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

48. Through their control of the Partnerships, AWS and AWS Affiliates caused the Partnerships to enter contracts and other arrangements with AWS-owned entities, including but not limited to arrangements regarding switch sharing and the ultimate "sale" of the Partnerships' assets. These contracts and arrangements materially breached the provision in each partnership agreement that allows the Partnership to enter into contracts with partners or their affiliates, but only to the extent that such transactions are no less favorable to the Partnership than could readily be obtained if they were made with a person who is not a partner or affiliate of a partner.

49. The purported sales of the assets of the Partnerships to new partnerships solely owned by AWS are a sham in that the transactions have no purpose or effect other than the forced sale of the Partnership interests of the minority partners for inadequate consideration

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800  F 206 516 3888

and the continuation of the businesses by the majority partners as before. There was no sale of Partnership assets within the meaning and intent of the term in the partnership agreements.

50. By prematurely causing the dissolution of the Partnerships, AWS and the AWS Affiliates breached the provision of the Partnership Agreements that provided that the Partnerships were to continue for a term of ninety-nine years. The Partnerships were wrongfully dissolved and the minority partners are being deprived of their right to continue the Partnerships.

51. Defendants breached the covenant of good faith and fair dealing implied in all contracts, including the partnership agreements.

52. AWS and its subsidiaries were served with notices of material default and failed to cure the breaches of the partnership agreements within 30 days. Under these circumstances, according to the terms of the partnership agreements, the non-defaulting partners, including the Plaintiffs, have the right to acquire the interests of the respective AWS Affiliates for the amount of their capital accounts. Plaintiffs are ready, willing and able to arrange for the purchase of these interests. Specific performance of each of the partnership agreements should be ordered. Alternatively, damages should be awarded in an amount sufficient to compensate Plaintiffs for the lost opportunity to purchase the majority partner's interests at book value, a loss that Plaintiffs estimate to be in excess of $100 million.

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800  F 206 516 3888

## COUNT THREE (TORTIOUS INTERFERENCE)

53. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

54. AWS caused the AWS Affiliates to breach their contractual obligations to the Plaintiffs and tortiously interfered with and prevented the performance of the AWS Affiliates according to the terms of the Partnership Agreements.

## COUNT FOUR (CLAIM BY S & D PARTNERSHIP FOR INTENTIONAL AND/OR NEGLIGENT MISREPRSENTATION)

55. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

56. AWS and the AWS Affiliates and their common officers and employees, knowingly, or with reckless disregard for the truth, caused documents to be mailed or distributed to Plaintiff S & D Partnership that were false or misleading with respect to material facts and/or failed to state material facts necessary to make the statements made not misleading, including:

    a. Defendants failed to disclose the true earnings and net worth of the Partnerships after adjustment to reflect the true costs of switch sharing;

    b. Defendants failed to provide financial statements explaining the methods of allocating revenues and costs between the Partnerships and other entities controlled by AWS;

    c. AWS and its affiliates operated the Partnerships as part of regional systems pursuant to a class action settlement that is due to expire on January 1, 2004;

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800  F 206 516 3888

Defendants failed to disclose how the sunset of this settlement agreement would affect the Partnerships' value; and

d. Defendants failed to disclose the value associated with the roll out of the new and enhanced service plans and the prospects for growth in revenue and earnings.

57. AWS and the AWS Affiliates, acting though their common officers and employees, knowingly caused the foregoing material omissions and misrepresentations to occur and are therefore liable to Plaintiff S & D Partnership for any and all damages flowing from those material omissions and misrepresentations.

58. Alternatively, AWS and the AWS Affiliates negligently issued to the minority partners the false or misleading coercive tender offer documents on which Plaintiff S&D Partnership relied on to its detriment.

59. AWS participated in the fraud alleged herein by virtue of its knowledge of the related-party transactions, its control over and/or receipt and/or modification of the coercive tender offer documents, its control of the shell AWS Affiliates and its orchestration of the sham "sale" transactions.

60. S & D Partnership relied on the accuracy of the defendants' representations of value of the Partnerships. In ignorance of the falsity and/or misleading nature of those statements, S & D Partnership accepted the coercive tender offer on terms that were unfair.

61. As a direct result of AWS' conduct and the conduct of the AWS Affiliates, S & D Partnership was damaged in an amount to be proved at trial.

COMPLAINT
Page 15

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800  F 206 516 3888

## COUNT FOUR (UNJUST ENRICHMENT)

62. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

63. In transferring their minority interests in the Partnerships, plaintiffs conferred a benefit upon the Defendants, which benefit was realized by Defendants, and the circumstances make it inequitable for Defendants to retain that benefit.

## COUNT FIVE (RESCISSION OF SALES OF ASSETS)

64. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

65. The sham "sales of assets" were the product of fraud and illegality and should be rescinded and declared void. The Plaintiffs should be allowed to continue their ownership interests in the Partnerships in their previous configurations.

## COUNT SIX (CONSTRUCTIVE TRUST)

66. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

67. Plaintiffs have the right under the circumstances and in fairness and justice to a constructive trust over those assets that have been wrongfully appropriated by AWS and the AWS Affiliates from the Partnerships and to prevent the unjust enrichment of AWS and the AWS Affiliates.

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800  F 206 516 3888

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the Court to enter judgment against AWS and the AWS Affiliates, jointly and severally as follows:

    a. For an order rescinding the "sales" of assets;

    b. For an order rescinding the dissolution and liquidation of the Partnerships;

    c. For an order enforcing the terms of the partnership agreements and directing that the interests of the AWS Affiliates be transferred to the minority partners of the respective Partnerships, pro rata, upon payment of the capital accounts of the AWS Affiliates;

    d. For an order that an accounting be had of all benefits derived from the use or appropriation of Partnerships' property and opportunities of the Partnerships;

    e. For an order imposing a constructive trust over any such property or benefits thereby derived;

    f. For monetary damages in an amount to be proven at trial;

    g. That the Court tax all of the costs of this proceeding, including reasonable attorneys' fees and experts' fees, against the Defendants; and

////

////

////

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800  F 206 516 3888

1  h. That the Court award such further and other relief as may be deemed
2  appropriate.
3  DATED this 25 day of August, 2003.

5  YARMUTH WILSDON CALFO PLLC

6  By: /s/ Michael Rosenberger
7  Michael Rosenberger
   And

8
9  John Oitzinger
   Attorney at Law
10 314 N. Main Street
   Helena, MT  59601
11
   289.01 dh192003 8/20/03
   Attorneys for Plaintiffs

COMPLAINT
Page 18

YARMUTH WILSDON CALFO PLLC
3080 WASHINGTON MUTUAL TOWER
1201 THIRD AVENUE
SEATTLE WASHINGTON 98101-3000
T 206 516 3800  F 206 516 3888